NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOHAIL MUSTAFA et al., | : | Civil Action No. 12-2538 (CCC) |
| Plaintiffs, | : | |
| v. | : | **MEMORANDUM OPINION & ORDER** |
| JOHN THOMPSON et al., | : | |
| Defendants. | : | |

This matter comes before the Court upon Defendants' motion seeking dismissal of Plaintiffs' complaint and Plaintiffs' motion seeking leave to amend their pleading, and it appearing that:

1. Plaintiff Sohail Mustafa ("Mustafa") is a Pakistani native who entered the U.S. in May 1996 by means of a temporary visa allowing him to remain in this country until mid-August 1996. Mustafa did not leave the U.S. at the expiration of that visa and remained in this country (either without any authorization or on the basis of an authorization the nature of which is not immediately apparent from the record) until September 2002, when he married Sultana Rizvi ("Rizvi"), a lawful permanent resident and Mustafa's co-plaintiff in this matter. Upon and due to marrying Rizvi, Mustafa obtained an authorization to remain in the U.S. until September 2004. In order to remain in this country after September 2004, Mustafa had to adjust his immigration status.

2. Mustafa filed an application seeking a green card to become a U.S. lawful permanent resident. Processing Mustafa's application, the U.S. Citizenship and Immigration

Services ("CIS") detected that the application was deficient in a certain way, and directed Mustafa to provide additional information. Mustafa, however, failed to comply with that request and, therefore, his green card application was denied.[1]

3. In May 2006, Mustafa filed another application with the CIS. That new application sought an "extreme hardship waiver" which, if granted, would have allowed Mustafa to become a permanent resident regardless of the aforesaid deficiency found in his green card application. The CIS, however, denied Mustafa's application for a waiver, thereby rendering him a removable alien, and he was served with a Notice to Appear in a removal proceeding instituted against him.[2]

4. Currently, Mustafa is in the midst of this immigration/removal proceeding. There is no dispute that Mustafa is entitled to request an "extreme hardship waiver" determination from the immigration judge ("IJ") presiding over that proceeding. It is also undisputed that, in the event the IJ denies Mustafa's application for a waiver, Mustafa may appeal said denial administratively to the Board of Immigration Appeals ("BIA") and, if his order of removal finalizes, he may seek review from the United States Court of Appeals for the Third Circuit: raising, inter alia, the very same waiver challenge. However, either anxious to speed this process up or perhaps concerned with the possibility of an

---

[1] It appears that the CIS's request for additional information resulted from the agency's detection of the fact that Mustafa entered the U.S. by using a fraudulent Belgian passport. Although Plaintiffs' complaint did not clarify the issue at the heart of the CIS determination, the docket – as read in toto – suggests that Plaintiffs seemingly do not dispute this fact.

[2] The Notice clarified that Mustafa was removable because of his use of the fraudulent Belgian passport upon his entry into the U.S. and for remaining in this country without a valid authorization after September 2004, that is, from the point in time when his initial authorization to be present in the U.S. due to his marriage to Rizvi expired.

      unfavorable outcome of Mustafa's endeavors before the IJ, BIA and the Court of Appeals, Plaintiffs commenced the instant matter raising Mustafa's challenges as to the CIS's denial of waiver before this Court. To that end, Plaintiffs filed a civil complaint: (a) alleging that the CIS violated both the Immigration and Nationality and Administrative Procedure Acts by denying Mustafa's request for a waiver; and (b) relying on the federal-question provision, § 1331, as well as on the mandamus statute and on 28 U.S.C. § 1337, the provision bestowing jurisdiction upon the district courts to hear civil matters arising under the statutes regulating commerce or trade. See Docket Entry No. 1.

5.   Defendants moved for dismissal of Plaintiffs' complaint on jurisdictional grounds as well as failure to state a claim upon which relief can be granted, pursuant to Rule 12. See Docket Entry No. 7. Defendants' motion states that (a) this Court is without jurisdiction to review the CIS's discretionary decisions regarding denial of waiver; (b) Plaintiffs' reliance on Section 1331 as an independent basis, not linked to any violation of a federal right, is a legal error; and (c) Plaintiffs' reliance on Section 1337 or on the mandamus statute, or on the Administrative Procedure Act ("APA") is misplaced. See id.

6.   In response to Defendants' Rule 12 motion, Plaintiffs filed an application seeking to amend their pleading. See Docket Entry No. 12. That application requested leave to "narrow the issues" to the question of whether the CIS's "interpretation" of the waiver provision was correct. Plaintiffs contend that this Court's ruling on that issue would alleviate the burden faced by Mustafa's IJ, who would, thus, be spared from the complex task of performing such "interpretation." See id.

7. Defendants opposed Plaintiffs' motion to amend by pointing out that this Court's lack of jurisdiction cannot be cured by Plaintiffs' paraphrasing of their claims. See Docket Entry No. 14. Therefore, Defendants urged this Court to deny Plaintiffs' application for leave to amend, as futile. See id. In response, Plaintiffs filed opposition to Defendants' Rule 12 motion to dismiss, effectively rewording Plaintiffs' motion to amend. See Docket Entry No. 23.

8. To the extent Defendants move this Court for dismissal of Plaintiffs' challenges based on Section 1331, asserted independently, Defendants' motion will be granted. Plaintiffs cannot invoke this Court's jurisdiction by asserting that they have a federal question; rather they must assert a cognizable, viable, and fact-supported violation of their federal rights in order to form the federal question they could litigate.

9. To the extent Defendants move this Court for dismissal of Plaintiffs' challenges on the grounds of facial inapplicability of the APA (or of the mandamus statute, or of Section 1337) to the circumstances at bar, Defendants' motion will be granted. No allegation raised in Plaintiffs' complaint (or in their application to amend their pleading) offers this Court a nexus between these legal provisions and the facts at hand.[3]

---

[3] Defendants' submissions suggest their position that Plaintiffs' APA and mandamus challenges, in addition to being deficient on merits, are procedurally moot. While the distinction is largely academic, the Court notes that Plaintiffs' APA and mandamus challenges are differently positioned procedurally, since the APA challenges to the CIS's administrative actions were mooted, while the mandamus challenges never even ripened due to the lack of a ministerial task the CIS had but failed to perform with regard to Mustafa. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). In contrast, the ripeness inquiry springs from the Article III "case or controversy" requirement that prohibits courts from issuing advisory opinions on speculative claims. See Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 138 (1974).

10. The foregoing leaves the Court solely with Plaintiffs' Immigration and Nationality Act ("INA") challenges: (a) maintaining that the CIS erred in its "interpretation" of the waiver provision; and (b) speculating that the IJ might err in performing that "interpretation." These challenges are facially deficient. Being an Article III tribunal, this Court cannot enter any advisory opinions; that – in and by itself – renders Plaintiffs' speculation-based claim invalid.[4] Furthermore, Plaintiffs do not seek a purely legal interpretation of the waiver provision, since they do not challenge the provision as drafted; rather, they challenge it as applied, hence attacking the CIS's determination.

11. The Supreme Court noted, in Kucana v. Holder, 558 U.S. 233 (2010), as follows:

> Focusing on § 1252(a)(2)(B), we note the lead line serving to introduce both of the subparagraph's two clauses: "[N]o court shall have jurisdiction to review . . . ." Clause (i) then places within the no-judicial-review category "any judgment regarding the granting of relief under section 1182(h) [and] 1182(i) . . . ." Each of the statutory provisions referenced in clause (i) addresses a different form of discretionary relief from removal, . . . and each contains language indicating that the decision is entrusted to the Attorney General's discretion. See, e.g., § 1182(h) ("The Attorney General may, in his discretion, waive [inadmissibility based on certain criminal offenses]"). Clause (i) does not refer to any regulatory provision [and it] enumerat[es the] administrative judgments that are insulated from judicial review . . . .

Id. at __, 130 S. Ct. 827, 836; see also Bedoya-Melendez v. United States AG, 699 F.3d 1270, 1272 (11th Cir. 2012) ("For example, under the hardship waivers of 8 U.S.C. § 1182(h) and 8 U.S.C. § 1182(i), Congress has explicitly and separately specified that each

---

[4] Moreover, this Court cannot provide the IJ with any guidance even on a non-speculative issue trusted for the IJ's resolution. This is because district courts lack appellate jurisdiction over the decisions rendered by immigration judges. That jurisdiction, albeit curtailed in certain respects, is vested exclusively in the BIA, the circuit courts and the Supreme Court of the United States.

5

of the underlying statutory eligibility criteria must be 'established to the satisfaction of the Attorney General.'").

12. Plaintiffs' preemptive attack on what might transpire cannot be squared either with the express bar on judicial review set forth in § 1252 or with the overall jurisdiction-stripping gist of the REAL ID Act.[5] Therefore, Defendants' motion seeking dismissal of Plaintiffs' INA challenges on these grounds is well merited, and Defendants' position that Plaintiffs' amendment of their pleading cannot cure this threshold deficiency is correct. However, considering the complexity of Plaintiffs' pleading and the obscurity of their following submissions, this Court cannot rule out the possibility that Plaintiffs' INA challenges are qualitatively different from those distilled by this Court and duly noted by Defendants. Therefore, out of abundance of caution, the Court finds it warranted to allow Plaintiffs an opportunity to show cause as to why their INA challenges should not be dismissed for lack of jurisdiction on the grounds detailed herein.

IT IS, therefore, on this __28__ day of __February__, 2013,

**ORDERED** that Defendants' motion, Docket Entry No. 7, is granted insofar as Defendants challenged: (a) Plaintiffs' reliance on § 1331 as an independent basis, not dependent on a specific federal right; and (b) Plaintiffs' reliance on Sections 1361 and 1337, as well as on the Administrative Procedure Act, 5 U.S.C. § 701, et seq., as sources of jurisdiction asserted

---

[5] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005) stripped the district court of jurisdiction to review petitioner's challenges to the immigration orders. It is self-evident that Mustafa, if denied waiver by his IJ and having that determination affirmed by the BIA, might indeed exercise his right to petition the Court of Appeals for review under 8 U.S.C. § 1252(a)(2)(D).

without a showing of relevance to these facts. Therefore, Plaintiffs' complaint, Docket Entry No. 1, is dismissed with prejudice as to these claims; and it is further

**ORDERED** that, within thirty days from the date of entry of this Memorandum Opinion and Order, Plaintiffs shall show cause as to why their Immigration and Nationality Act challenges should not be dismissed for lack of jurisdiction in light of the language of Sections 1252, 1182(h) and (i), the letter and spirit of the REAL ID Act, and the Supreme Court and Court of Appeals relevant precedent; and it is further

**ORDERED** that the Clerk shall administratively terminate this matter by making a new and separate entry on the docket reading, "CIVIL CASE TERMINATED." The Court stresses that an administrative termination is not a final dismissal on the merits, and the Court retains its jurisdiction over this matter; and it is further

**ORDERED** that, in the event Plaintiffs fail to file a written statement showing cause in accordance with the terms of this Memorandum Opinion and Order, Plaintiffs' Immigration and Nationality Act challenges will be deemed withdrawn without further notice; and it is further

**ORDERED** that, in the event Plaintiffs file a written statement aiming to show cause in accordance with the terms of this Memorandum Opinion and Order, Plaintiffs must serve their written statement upon Defendants. Defendants may file a response to Plaintiffs' statement within thirty days from the date of being served. Plaintiffs may reply to Defendants' response, affecting service of their reply within fifteen days of being served with Defendants' response; and it is further

**ORDERED** that Plaintiffs' motion, Docket Entry No. 12, seeking leave to amend Plaintiffs' pleading is dismissed as premature at this juncture; and it is finally

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon the parties by means of electronic delivery.

_____
**Claire C. Cecchi,**
United States District Judge